IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY D. RAY, | * | |
| Petitioner | * | |
| v. | * | CIVIL ACTION NO. JFM-12-286 |
| J.F. CARAWAY, *Warden* | * | |
| Respondent | * | |

\*\*\*

# **MEMORANDUM**

Anthony D. Ray is a U.S. Bureau of Prisons ("BOP") inmate currently confined at the Federal Correctional Institution at Cumberland, Maryland ("FCI-Cumberland"). On November 4, 2010, he filed this 28 U.S.C. § 2241 petition for habeas corpus relief, seeking to expunge an adjustment, have rule violation sanctions reduced, and have his forfeited good conduct time ("GCT") restored. ECF No. 1.[1] Ray claims that he was denied due process during disciplinary proceedings because prison officials withheld or allowed the destruction of evidence probative to his guilt or innocence despite his express request the evidence be retained. ECF Nos. 1 & 13.

The issues have been fully briefed, and the court finds oral hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the petition shall be denied and dismissed.

Ray maintains that the regulations concerning chain of custody for urine samples was not followed in his case. He states that he was never instructed to wash his hands prior to providing the urine specimen and as such the specimen was exposed to possible contamination. He also states that the collecting officer failed to verify with him that the specimen numbers on the collection cup,

---

[1] The petition was initially filed in the United States District Court for the District of Columbia and subsequently transferred here. ECF No. 14. Petitioner has filed a "motion for summary judgment" (ECF No. 13) which is construed as a supplement to the petition.

barcode, and log were identical. Petitioner maintains that this failure is material to the accuracy, integrity and reliability of the test result. ECF No. 13. Petitioner states that he did not rely on these deficiencies during his disciplinary hearing because the BOP, in violation of its own policies, failed to provide him copies of the chain of custody and laboratory reports. *Id*.

Petitioner indicates that on January 13, 2005, he filed a FOIA request to the BOP seeking disclosure of "copies of any Operations Memoranda or other documents which set forth procedure, protocol, standards, or guidelines established to ensure the reliability and accuracy of urine analysis;" and (2) copies of "any publications and/or the source and substance of any published information there should not be any false positives for cocaine metabolites from Articaine or its metabolites." *Id.* Ray states that he sought the information in order to determine the "cross-reactivity" of the dental anesthetic Articaine/Septocaine which was administered to him two to three days before giving the urine sample which tested positive for cocaine. *Id*. Petitioner maintains that Articaine/Septocaine is capable of producing a false positive urine test for cocaine, although he provides no evidence to support this position. He further maintains that the BOP failed to disclose information responsive to his FOIA request which would have been material to his disciplinary hearing defense.[2] *Id*.

Ray further alleges that his due process rights were violated due to the BOP's failure to preserve the remainder of the urine specimen which was potentially exculpatory. *Id*. Petitioner

---

[2] Petitioner later filed a complaint under the Freedom of Information Act against the BOP alleging the BOP failed to provide responsive records or withheld records pertaining to the urine test. The United States District Court for the District of Columbia granted the BOP's motion for summary judgment, on September 12, 2011, finding the agency had established that it conducted a search reasonably calculated to uncover all relevant documents and its obligations under FOIA were satisfied. The court noted that FOIA "neither requires an agency to answer questions disguised as a FOIA request, or to create documents or opinions in response to an individual's request for information." Under the doctrine of res judicata, plaintiff is barred from re-litigating this issue, i.e. whether the BOP withheld pertinent records regarding the urine test, in the instant petition. *See Laurel Sand & Gravel Inc. v. Wilson*, 519 F. 3rd 156, 161-162 (4th Cir. 2008).

states that he requested preservation of the urine sample prior to its disposal and alleges that failure to preserve same evidences bad faith on the part of the BOP. *Id.*

The BOP has the authority to provide for the protection, instruction, and discipline of all persons convicted of offenses against the United States. *See* 18 U.S.C. § 4042(a)(3). The rules concerning inmate discipline, found in 28 C.F.R. §§ 541.1 et seq, provide for an exhaustive review process. If staff believe that an inmate has violated a BOP regulation, an incident report is prepared and the inmate is provided a written copy of the charges. Ordinarily, this occurs within 24 hours of the staff's becoming aware of the incident. *See* 28 C.F.R. § 541.15(a) (now 28 C.F.R. § 541.5(a)).[3]

An investigating officer will then advise the inmate of the charges against him, request a statement from the inmate, and advise him of his rights. After the investigation is completed, the matter may be informally resolved and the matter closed, or materials are forwarded to the Unit Disciplinary Committee ("UDC") for an initial review, which is ordinarily conducted within three working days. *See* 28 C.F.R. § 541.14(b) (now 28 C.F.R. § 541.5(b) & 541.7). The inmate is entitled to be present at the hearing except during the deliberations of the decision makers or when institutional security would be jeopardized by the inmate's presence. The inmate may also make a statement and present documentary evidence on his own behalf. *See* 28 C.F.R. § 541.15(c)-(d) (now 28 C.F.R. §§ 541.7(d) & (e)).

After considering all of the evidence presented at the hearing, the UDC makes a decision based on the facts and, if there is conflicting evidence, based on the greater weight of the evidence. *See* 28 C.F.R. § 541.15(f) (now 28 C.F.R. § 541.7(e)). If the UDC finds that the inmate committed the prohibited act or a similar act if reflected in the incident report and determines that the violation

---

[3] 28 C.F.R. Part 541 was consolidated effective March 1, 2011. *See* 75 F.R. 81853. The court applies the regulations in effect at the time of the events at issue. *Sprouse v. Schweiker*, 677 F. 2d 1029, 1030 (4th Cir. 1982). As such, citations are provided as to the regulations then in place with reference to the current regulation in parenthetical.

is serious and warrants consideration for non-minor sanctions, the UDC refers the charges, without indication of findings as to the commission of the alleged violation, to the Disciplinary Hearing Officer ("DHO") for further proceedings. *See* 28 C.F.R. § 541.15(f)(1)-(3) (now 28 C.F.R. §§ 541.7(f) & (g). The UDC advises the inmate of his rights to be afforded at the hearing before the DHO and asks the inmate to indicate a choice of staff representative, if any, the names of witnesses he wishes to be called to testify at the hearing, and the nature of the testimony witnesses are expected to provide. *See* 28 C.F.R. § 541.15(i) (now 28 C.F.R. §§ 541.7(g) & 541.8)).

When appearing before the DHO, the inmate is entitled to: (1) make a statement and to present documentary evidence; (2) submit the names of requested witnesses and have them called to testify; and (3) present documents on his behalf. *See* 28 C.F.R. § 541.17(c)-(f) (now 28 C.F.R. §§ 541.8(d), (e) & (f) . Witness testimony and documentary evidence may be presented provided the calling of witnesses and disclosure of documents does not jeopardize prison or inmate security. *Id.*

The DHO makes a determination as to whether or not the inmate committed the charged act(s) or similar act(s) if reflected in the incident report and prepares a record of the proceedings which need not be verbatim. *See* 28 C.F.R. § 541.17(g) (now 28 C.F.R. §§ 541.8(h)). The record documents the advisement of the inmate's rights, the findings and decision of the DHO, and the specific evidence relied on by the DHO, and includes a brief statement of the reasons for the sanctions. *Id*. A written copy of the DHO's decision and disposition must be provided to the inmate. *Id*.

A challenge to the DHO decision must be noted within 20 calendar days to the Regional Director for the region where the inmate is incarcerated. *See* 28 C.F.R. § 542.14(d)(2) & 542.15(a). If the inmate is not satisfied by the Regional Director's response he may appeal to the Office of the General Counsel within 30 days of the Regional Director's response. *See* 28 C.F.R. § 542.15(a).

In reliance on Ray's base file and the declarations of Melissa Washington, respondent contends that Ray's due process rights were not violated during his adjustment review process. He provides the following information:

Since November 1, 1999, Ray has been incarcerated at the Federal Correctional Institution at Cumberland, Maryland. ECF No. 16, Ex. 1. On November 9, 2005, at 6:08 a.m., Ray was randomly selected to provide a urine sample. Ray provided the specimen, number B01652926 (the "sample"). *Id.*, Ex. C. After providing the sample, Ray signed the Chain of Custody for Drug Analysis Form ("COCF") certifying that the sample provided to the officer was supplied by him, sealed in his presence, and the information on the form and label was correct. The sample was then sent to the National Toxicology Laboratories, Inc., ("NTL") in Bakersfield California. The sample was received on November 16, 2005. *Id.*, Attachment D. On November 18, 2005, a Laboratory Report from NTL was received at FCI-Cumberland indicating that the sample tested positive for cocaine (Benzoylecgonine). *Id.*, Attachment. E. Before the positive result was reported to FCI-Cumberland, the test was repeated using a different laboratory procedure. *Id.*, see also, Bureau of Prison ("BOP") Program Statement 6060.08. An inmate may not request retesting of a urine sample. *See* BOP Program Statement 6060.08.

On November 18, 2005, as a result of the positive lab report, a Request for Medical Prescription Information was sent to the Health Services Department at FCI- Cumberland. *Id*. Attachment F. Review of Ray's medical records demonstrated that he had not been prescribed any medication which would test positive for cocaine (Benzolyecognonine). In addition, the Chief Pharmacist for FCI-Cumberland reviewed the metabolism and chemical structures of Articaine (a dental anesthetic administered to Ray days before he provided the sample) and its metabolites and

5

determined that neither it nor any of its metabolites are structurally similar to cocaine or any of its metabolites. *Id*., Attachment. G. The Laboratory Corporation of America was also contacted. They advised that "No modern dental anesthetic produces this [benzolyecgnonine] substance." *Id*. As a result of the positive test for cocaine on the urine sample and no information in Ray's medical file which would indicate the result was a "false positive" due to cross-reactivity, Ray was charged with a Code 112 violation, use of any narcotics or related paraphernalia not prescribed to that individual by medical staff. *Id*., Attachment. E.

On November 18, 2005, petitioner received written notice of the charges, a copy of the incident report, supporting memoranda, the NTL laboratory report, and COCF.[4] The UDC reviewed the incident report on November 23, 2005, and given the severity of the offense, referred the matter to the DHO for further proceedings. On that same day, Ray was advised of his rights before the DHO. He invoked his right to have a staff representative and waived his right to have witnesses testify at the DHO hearing. *Id*., Attachment. H.

A hearing was held before the DHO at FCI- Cumberland on December 5, 2005. *Id*., Attachment. I. At the hearing Ray acknowledged receiving a copy of the incident report and verified his signature on the COCF. Ray denied using drugs not prescribed to him and stated he was treated by the dentist and given an anesthetic during the dental procedure a couple of days before providing the sample. *Id*. The DHO found Ray committed the act as charged based upon the incident report, the COCF, the laboratory report from NTL, the memoranda of the Registered Nurse and Chief Pharmacist, as well as Ray's statement that the test was a "false positive" due to his having been given an anesthetic during his dental procedure. Ray was sanctioned to 20 days disciplinary

---

[4] Ray disputes receiving the COCF. ECF No. 13.

segregation, forfeiture of 60 days good conduct time, and 365 days of visiting restrictions were imposed. Ray was provided a copy of the DHO report on December 15, 2005. *Id*.

Although prisoners do retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (*citing Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of GCT, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel during prison disciplinary proceedings. *See Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n.5.

The court finds that the disciplinary process associated with Ray's institutional charge meets these due process procedural requirements. He received advanced written notice of the charges, was advised of his rights, and received formal notice of the DHO hearing. Further, the DHO submitted a written statement as to the evidence relied on to determine that Ray violated Code 112, and offered specific reasons why the sanctions were imposed. Ray was given the opportunity to call witnesses.

He chose not to call any witnesses on his behalf.[5] Ray was given the opportunity to have a staff representative present and in fact invoked this right. Ray's testimony did not exonerate him from the Code 112 charge; rather there, was ample evidence that Ray's proffered explanation for the positive test result was factually inaccurate.

The thrust of Ray's claim is that his due process rights were violated by the BOP withholding the COCF and information concerning the cross-reactivity of Articaine, and failing to preserve the remainder of the urine sample. ECF No. 13. Plaintiff relies on *Brady v. Maryland*, 373 U.S. 83 (1963) and *Arizona v. Youngblood* 488, U.S. 51 (1987) to advance his argument that he was not able to present evidence on his behalf.

"The *Brady* rule is derived from due process and is designed to ensure fair **criminal** trials." *United States v. Colkley*, 899 F. 2d 297, 302 (4th Cir. 1990) (emphasis supplied). In order to establish a *Brady* violation as to evidence still within the government's possession, a criminal defendant must demonstrate that (1) the prosecutor withheld evidence favorable to the defendant; (2) the prosecutor suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. Favorable evidence is evidence that tends to exculpate the accused or adversely affects the credibility of a prosecution witness. *See United States v. Trevino*, 89 F. 3d 187, 189 (4th Cir. 1996). Evidence is determined to be "material" if there is a reasonable probability that its disclosure would have generated a different result. *United States v. Bagley*, 472 U.S. 667, 682 (1985). While a *Brady* violation may occur irrespective of the good or bad faith of the prosecutor, the government's failure to preserve potentially exculpatory evidence hinges on a finding of a bad faith. *See Arizona v.*

---

[5] The DHO need not permit the calling of witnesses who will simply present repetitive evidence; thus, the officer who wrote the incident report need not be present at the hearing and subjected to cross-examination. *See* 28 C.F.R. § 541.8(f)(2). "There is no constitutional right to confront and cross-examine witnesses" during a prison disciplinary hearing. *See Orozco-Franco*, 2011 WL 806516 at *3 (citing *Brown v. Braxton*, 373 F.3d 501, 505-06

*Youngblood*, 488 U.S. 51, 58 (1988) ("unless a criminal defendant can show bad faith…failure to preserve potentially useful evidence does not constitute a denial of due process of law.")

Ray maintains that *Brady* has been extended to prison disciplinary proceedings and relies on *Chavis v. Rose*, 643 F. 2d 1281, 1286 (7th Cir. 1981) to support his contention. This Circuit has rejected such an extension in an unreported opinion finding:

> Under the principles established in *Wolff*, we reject [petitioner's] contention that the full panoply of criminal trial rights flowing from *Brady* and its progeny apply to prisoners in disciplinary settings. *See Ponte v. Real*, 471 U.S. 491, 495 (1985); *Baxter v. Palmigiano* 425 U.S. 308, 315 (1976). *Brady's* broad disclosure requirements simply cannot be reconciled with the need and exigencies of the institution environment. *See Wolff*, 418 U.S. at 566 ("Prison officials must have the necessary discretion…to limit access to other inmates to collect statements to go to compile other documentary evidence."). The pre-trial discovery right that *Brady* commands would unduly interfere with prison officials' efforts to preserve safety and order by screening potentially disruptive information form inmate review. Moreover, it would inject unnecessary delay into a process that just be expeditious to be effective."

*See Wise v. Carpenter* 1988 WL 4574, at *3 (4th Cir. 1988). *See also Kenney v. Barron*, 239 Fed. Appx. 494 (11th Cir. 2007)("we have never held principles of *Brady* extend to prison disciplinary hearing analyzing due process claims under *Wolff*"); *Godlock v. Fatkin*, 84 Fed. Appx. 24, 3 (1th Cir. 2003)("this circuit has not held that *Brady* is applicable to prison disciplinary proceedings"); *Blunt v. Johnson*, 2007 WL 1225993 (W.D. Va. 2007) ("while the United States Court of Appeals for the Seventh Circuit has extended the *Brady* rule to prison disciplinary proceedings…the court questions the validity of its application in this context).

Even if this court were to conclude that *Brady* applied to prison disciplinary proceedings, Ray's claim would fail. Ray claims that the COCF and laboratory reports would have made him aware that the collection of his urine specimen was "constitutionally infirm" and would have

---

(4th Cir. 2004)).

9

provided him information regarding the cross reactivity of Articaine which would have shown that it is capable of producing a false positive urine test for cocaine.  ECF No. 13.

The evidence demonstrates that Ray was provided the COCF and laboratory report on November 18, 2005.  Further the language contained in the COCF which Ray maintains first alerted him to a possible defense based on the collection procedures is the exact language contained in BOP Program Statement 6060.08 which was readily available to Ray.[6]  Other than a challenge to the test methodology employed by the laboratory, all other information was contained in the body of the incident report served on Ray.  As such, even if petitioner had not received the COCF and laboratory report he was not prejudiced as the information contained therein was available elsewhere to Ray and was not in the sole control of the BOP. Moreover, contrary to Ray's assertions, the documents he claims not to have received do not exculpate him, nor do they contain material which would undermine confidence in the outcome of the disciplinary proceedings.  Rather, the documents demonstrate that the sample was submitted via  proper chain of custody and collection procedures and the sample tested positive for cocaine in two different laboratory tests.  Ray's conclusory allegations and speculation regarding the effect of the COCF and laboratory reports in his disciplinary proceeding fails to satisfy the *Brady* test.  "The mere possibility that an item of undisclosed information might have helped [his] defense, or might have affected the outcome of the [hearing], does not establish 'materiality' in the constitutional sense. *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).  As such, the court cannot find that the materials at issue constitute *Brady* materials or that the failure to disclose them constitute a *Brady* violation.

---

[6] Ray indicates that he was housed on segregation status.  He does not offer how his segregation status impeded his ability to review the appropriate program statement.

Ray's claim that the procedure used to collect his urine sample was constitutionally infirm in that the collecting officer "failed to instruct Petitioner to wash his hands prior to providing the urine specimen…failed to verify with Petitioner that the specimen numbers on the COCV, on the peel-off barcode, and on the numbered label to be affixed to the Urine Surveillance Log were identical" is unavailing. ECF No. 13. Ray avers that the collecting officer "did no more than ask Petitioner to print and sign his name in the appropriate places on the COCF." *Id*. Ray's claim is belied by the record. Ray signed the COCF certifying that the specimen was supplied by him, sealed in his presence, and information on the form and label was correct. He cannot now claim that he failed to read that which he signed. Further, at his disciplinary hearing, Ray confirmed that the specimen control number was his and verified his signature on the COCF. Lastly, the specimen number on the COCF, laboratory report and peel off barcode are all identical. ECF No. 16, Attachments C & D. Even if Ray was not instructed to wash his hands prior to providing the sample, such a failure does not give rise to a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). To the extent that written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Weller v. Dept. of Social Services,* 901 F.2d 387, 392 (4th Cir. 1990); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987). The law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Godlock v. Fatkin*, 84 Fed. Appx. 24, 30 (10th Cir. 2003)("Petitioner does not have cognizable claim for federal habeas relief based solely on the

failure of [the correctional facility] to follow particular regulations and directives"); *see also Alicea v. Howell*, 387 F. Supp. 2d 227, 233 (W.D.N.Y. 2005)(even if procedures in testing and preserving inmates' urine sample did not comport with department of corrections regulations, no due process claim stated).

Ray's claim that he placed the BOP on notice to preserve the sample as evidence so that it could be independently retested likewise fails. The sample was securely maintained in the chain of custody. FCI-Cumberland does not preserve the sample; samples are not returned to the institution after testing, nor does FCI-Cumberland have control or knowledge as to NTL preservation policies once NTL receives the urine samples. Any failure on the BOP to preserve the sample did not violate petitioner's due process rights as there is no evidence that the BOP acted in bad faith. Further, under BOP Program Statement 6060.08, retesting is prohibited at the inmate's request. While the Fourth Circuit has not addressed the issue of whether inmates have a due process right to submit a second sample for testing other courts to have considered this issue find no right to independent testing, even at the inmate's expense. *See Mathie v. Goord*, 267 Fed. Appx. 13, 134 (2d Cir. 2008)(rejecting as without merit prisoner's challenge to Department of Corrections procedure for destroying urine samples after testing and prohibiting prisoner from obtaining independent testing at their own expense); *see also Spence v. Farrier*, 807 F. 2d 753, 756 (8th Cir. 1986)(rejecting due process challenge that allowed test results into evidence at prison disciplinary proceedings after urine samples were twice tested using a method that was ninety-five percent accurate); *Swint v. Vaughn*, 1995 WL 366056 6 (E.D. Pa. 1995)("An inmate has no due process right to submit a second sample for drug testing, *citing Allen v. Purkett* 5 F. 3d 1151, 1153 (8th Cir. 1993). Given that petitioner's sample was twice tested for the presence of drugs, the BOP had no control over the sample once it

12

was sent to the lab, and petitioner has failed to demonstrate a right to insist on third testing of the sample, the undersigned concludes that petitioner's right to present evidence at his infraction hearing was not unconstitutionally infringed by the action of the BOP.

Additionally, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.[7]

The proceedings before this court are not a retrial of the incident and the undersigned finds that the DHO decision was based upon "some evidence." The DHO report indicates that in finding some evidence to sustain the Code 112 charge, he relied on: (1) the NTL report dated November 17, 2005, showing a positive result for cocaine for Specimen No. B01652926; (2) the COCF for Specimen No. B01652926, signed by Ray and dated November 9, 2005; (3) the Registered Nurse's memorandum stating Ray had not been prescribed any medication that would result in a positive cocaine test; (4) the reporting officer's statement contained in the incident report indicate Ray supplied Specimen No. B01652926 on November 9, 2005 at 6:08 a.m. and that on November 18,

---

[7]The role of the district court is not to afford a *de novo* review of the disciplinary board's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by the prison officials. Otherwise, the federal court would assume the task of retrying all prison disciplinary disputes.

2005, at approximately 7:15 a.m. a fax mail laboratory report was received from NTL indicating the specimen tested positive for cocaine (Benzoylecgonine); (5) Ray's statement confirming the specimen control and verifying his signature on the COCF; (6) Ray's allegation that the results were a false positive resulting from an anesthetic given to him during a dental procedure; and (7) the Chief Pharmacist's memorandum stating the chemical structure of the dental anesthetic would not produce a false positive test result. ECF No. 16.  These facts are sufficient upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding Ray guilty of the offense charged.

     For the aforementioned reasons the court concludes that Ray's disciplinary hearing process comports with due process and his constitutional rights were not otherwise violated.  The DHO's decision shall stand.   Habeas relief shall be denied.   A separate Order follows.

__August 2, 2012_____      ____/s/_____
Date                                    J. Frederick Motz
                                            United States District Judge